HALL, Judge.
Mrs. Carter appeals from a judgment awarding Mr. Carter a divorce and custody of their three-year-old daughter, Kelly. Finding no error or clear abuse of discretion by the trial court, we affirm the judgment.
On appeal, appellant assigns as error (1) the granting of a divorce on the grounds of appellant’s adultery; (2) the failure to grant appellant a divorce on the grounds of appellee’s adultery; (3) the signing of an ex parte order granting provisional custody to Mr. Carter at the time he filed suit and the failure of the trial court to vacate the order; and (4) the granting of custody to appellee, particularly in that the trial court’s decision was based primarily on inadmissible hearsay evidence of the criminal record of the man whom appellant was seeing.

Facts

The parties were married in September 1971 and their daughter, Kelly, was born on June 24, 1978. In the spring of 1980 appellant’s attitude toward her husband became cool and withdrawn. On a few occasions she came in late at night without satisfactory explanation, and in April she left home with her daughter and filed suit for separation. Appellant moved to a mobile home and would not disclose to appellee where she was living.
In May, appellee followed his wife from her place of work to her trailer home and then to another mobile home where she was met by a man, later identified as Jerry Johnson. Appellant and her daughter spent the night at the man’s home.
Appellee then hired a private investigator who observed appellant, accompanied by her daughter, go to Johnson’s home on three occasions and spend the night. In the latter part of May, appellee confronted appellant with these facts and had the private investigator tell appellant what he had learned, including the fact that Johnson had a criminal record. The parties agreed to reconcile and appellant promised she would break off her affair with Johnson.
Within a few weeks, appellant’s attitude toward appellee cooled and he suspected she was again seeing Johnson. Appellee followed appellant one day and saw her meet Johnson at a residence, later established to belong to Johnson’s father, where she went inside with Johnson and stayed for about an hour. Appellee again employed the investigator, who saw appellant meet Johnson at a restaurant at lunch time on one occasion and saw them embrace and kiss outside the restaurant. The investigator saw them meet on two or three other occasions at Johnson’s father’s residence at noon or in the late afternoon after appellant left work. On each occasion appellant and Johnson went into the residence and stayed 45 minutes to one hour.
Appellee contacted his lawyer and a petition for divorce was prepared. On the morning of July 17 appellee picked his daughter up at the nursery, the petition was filed, an order granting provisional custody to appellee was signed, and appellant was served at work. The parties have lived separate and apart since that time.
*245 Appellant filed a reconventional demand and a rule for provisional custody was issued. The rule was continued and then dismissed by appellant’s counsel because of conflicts in his schedule. Thereafter, other pleadings were filed by the parties, various rules were scheduled for trial and continued, and appellant employed new counsel. All issues were ultimately tried in August 1981, more than a year after suit was originally filed.
At trial, in addition to the facts recited above, it was established that appellee is a stable employee at a manufacturing plant with a good income. He is an attentive father with a loving relationship with his daughter, who is happy and well adjusted. For several months appellee has been dating Gail Cummings, a widow with one child, and they plan to be married as soon as legally possible. They attend church regularly with their children. The daughter stays at a nursery while appellee works and when his work and other activities require it, the daughter stays with competent babysitters, sometimes overnight.
There was evidence by a private investigator that appellee spent several nights at the home and lake camp of another lady before he started dating Mrs. Cummings. The accuracy of the investigator’s testimony was seriously impeached by substantial evidence that appellee was elsewhere at the times specified by the investigator and it was established that on the occasions when appellee spent the night at the lady’s house and camp there were a number of other family members present.
It was also established that appellant had been a good, loving mother and, while the parties lived together, was the nurturing parent who primarily attended to the child’s needs. At time of trial, she was employed as a secretary and was living with her family, mother, father, brothers and sisters, and their children. Appellant has always attended church regularly.
There was evidence that appellant was seen with Jerry Johnson on several occasions after suit was filed, as late as a few weeks prior to trial. It was established that Johnson was arrested in July 1980 and in December pled guilty to one count of distribution of marijuana for which he was sentenced to six years in prison. He remained free on bail pending appeal, having reserved his right to appeal on a motion to suppress which had been denied. A “rap sheet” showing several previous arrests and one previous conviction for burglary was introduced into evidence over the objection of appellant’s counsel.

Action of the Trial Court

After several days of trial, the district court, in oral reasons for judgment, found in spite of appellant’s denials, that she had committed adultery with Johnson on several occasions prior to the reconciliation in May 1980, but that these acts were forgiven when the parties reconciled. The court further found that because of their previous adulterous relationship it was reasonable to infer that appellant and Johnson committed adultery in their later clandestine meetings, and that appellee was entitled to a divorce on the grounds of adultery. The court found that the evidence was insufficient to prove adultery on the part of appellee. On the issue of custody, the court found that both parents were capable of providing a good home for the child. The factor that tipped the scales in favor of appellee was appellant’s continued association with Johnson and the likelihood that the child, if in appellant’s custody, would be adversely influenced by that association. The court also emphasized the beneficial effect of ap-pellee’s planned marriage to the woman he had been dating, whom the court found to be a person of outstanding character who would assist in providing an exemplary home for the child.
The judgment rendered granted appellee a divorce, held appellant was not without fault thus precluding permanent alimony, and granted custody of the child to appellee subject to reasonable visitation rights of appellant.

The Divorce

Appellant argues that the circumstantial evidence presented, particularly the evi *246 dence as to her brief meetings with Johnson after the reconciliation, was insufficient to establish adultery on her part. She further argues that she proved adultery on the part of appellee.
By supplemental petition, appellee prayed for a divorce on the ground of having lived separate and apart for more than one year. LSA-R.S. 9:301. This ground was established and supports the judgment granting the divorce. Accordingly, it is unnecessary for this court to review the evidence of appellant’s adultery to determine whether that evidence was sufficient to establish grounds for divorce.
Appellant does not seriously question on appeal the trial court’s finding that she was not free from fault and, therefore, precluded from obtaining permanent alimony. In this regard we note that the evidence convincingly established her adultery prior to the reconciliation and that she continued to see Johnson after the reconciliation. Her fault brought about the dissolution of the marriage.
Appellant’s evidence of appellee’s association with a lady at her home and camp was impeached to a great extent, was otherwise explained as involving no improper conduct, and fell far short of proving adultery on his part.

Custody

Appellant argues that the order giving appellee provisional custody of the child was not made after inquiry by the judge who granted the order as required by LSA-C.C. Art. 146, and that this order, together with the long delay before the custody issue was tried, gave appellee an unfair advantage in the custody battle. Appellant further argues that it is in the best interest of the small daughter for custody to be granted to her mother, who was the child’s nurturing parent prior to the separation. It is further argued that the trial court erred in considering inadmissible hearsay evidence of the criminal record of the man appellant was seeing.
The scope of the inquiry made by the trial judge who signed the order of provisional custody at the time the suit was filed is not disclosed by the record, although it is clear that any inquiry made was ex parte. A district judge may, upon an ex parte showing of good cause, grant temporary custody to one parent pending trial of a provisional custody rule. However, LSA-C.C. Art. 146 contemplates an adversary inquiry before provisional custody is granted and the ex parte custody order should not have been signed without, at the same time, ordering the issuance of a rule to show cause fixing a hearing on the matter of custody for a certain date in accordance with LSA-C.C.P. Arts. 2591, et seq.
Within a week of the signing of the provisional custody order, however, a reconven-tional demand was filed on behalf of appellant and, on her petition, a rule to show cause was issued to be heard a few days thereafter. The custody matter could have been heard at that time but was continued and then dismissed at the request of appellant’s counsel. Any prejudice to appellant flowing from the ex parte order was of only a few days duration. The record does not show that the delay in getting the custody matter to trial resulted from any dilatory or otherwise improper tactics by counsel for appellee or from any action or nonaction on the part of the trial court.
In any event, the issue facing the trial court at trial more than a year after the suit was filed, and facing this court upon appellate review some 20 months after suit was filed, was and is the granting of permanent custody in accordance with the best interest of the child. LSA-C.C. Art. 157.
We find no abuse of discretion by the trial court in awarding custody to the father. The court carefully weighed the factors favoring each parent and articulated its reasons for considering it to be in the child’s best interest to award custody to the father. We find no fault with the trial court’s reasons.
The court noted that this was one of the most difficult cases with which it had been faced. It found that both parents dearly love the child and that the child would receive the best of care from either of *247 them. The court recognized the advantage appellee had because he had custody of the child for the year the suit had been pending, giving him the chance to cement a relationship with his daughter. The court found that prior to the separation it was the mother who spent the most time with the child, but thereafter the father made himself very available to Kelly.
The trial court recognized that normally little girls should be with their mother and that the maternal grandparents stood behind appellant to assist with Kelly. On the other hand, the court was impressed with the character of appellee’s fiancee who would love and help care for Kelly.
The decisive factor to the trial court was appellant’s continued association with Johnson who, during the pendency of this proceeding, had been sentenced to six years in the penitentiary, but was yet free on bail. The court noted that had appellant heeded advice to discontinue contact with Johnson there would have been no breakup of the marriage or fight over custody. The court stated that Kelly should not be subjected to the type of influence inherent in appellant’s relationship with Johnson.
While some of the evidence presented as to Johnson’s criminal record was hearsay and perhaps should not have been admitted into evidence, the trial court had before it competent evidence of Johnson’s recent conviction and sentence. The minutes of the sentencing court reflected a prior conviction. No evidence was presented to show that any of this information was inaccurate. The facts supported by competent evidence were sufficient to substantiate the trial court’s determination that appellant’s continued association with Johnson could have a detrimental influence on the child should appellant be granted custody.
We find no error or abuse of discretion in the best interest determination made by the trial court.

Decree

For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.